UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Christopher Bruun, individually, and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>Red Robin Gourmet Burgers, Inc., a Delaware corporation, et al.,<br><br>Defendants | Case No.: 2:20-cv-00903-JAD-BNW<br><br>**Order Remanding Action Back to State Court**<br><br>[ECF Nos. 7, 8, 11, 12] |

This is a proposed nationwide class action on behalf of Red Robin restaurant customers who were cheated out of two ounces of the Stella Artois beer they ordered because the chalices in which the 16-ounce beers are served actually hold just about 14 ounces.[1] The Red Robin defendants removed this case from state court under the Class Action Fairness Act (CAFA), which requires an aggregate $5,000,000 amount in controversy for federal jurisdiction,[2] noting that their corporate-owned stores have "sold over $16,000,000 worth of draft Stella Artois beer" since 2016, and data from their franchised locations would increase that tally.[3] But the two ounces by which each pour was short would account for just a fraction of that beer money, and Red Robin's sum ignores the fact that it sold the Stella product in multiple sizes and this action challenges only the 16-ounce one, so the plaintiff moves to remand this action back to state court. Because Red Robin's figures are mostly foam and fail to satisfy CAFA's jurisdictional amount-in-controversy threshold, I grant the motion.

---

[1] ECF No. 1-3 at 3.
[2] 28 U.S.C. § 1332(d).
[3] ECF No. 1, ¶ 19.

**Discussion**

Defendants Red Robin Gourmet Burgers, Inc. and Red Robin International, Inc. removed this case from Nevada's Eighth Judicial District Court under the Class Action Fairness Act of 2005 (CAFA).[4] "CAFA gives federal courts jurisdiction over certain class actions . . . if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million."[5] Because no presumption against removal applies in CAFA cases, a defendant's amount-in-controversy allegation "should be accepted when not contested . . . ."[6] But when that allegation is challenged," the burden is on the defendant to show "by a preponderance of the evidence [that] the amount-in-controversy requirement has been satisfied"[7] using "summary-judgment-type evidence."[8]

In the removal petition, Red Robin alleges that "over $16,000,000 worth of draft Stella Artois beer" was sold from 2016 when its 454 corporate-owned restaurants began pouring it, through the May 2020 removal.[9] It adds that there are another 102 franchised locations (whose sales figures are yet unavailable[10]) that also sold the product, which would increase that total,[11] as would an award of attorney's fees.[12] The restauranteur concludes that "[t]he proposed class and the number of restaurants involved, the fact that all of the corporate restaurants were

---

[4] *Id.* at 1.
[5] *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B), and *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).
[6] *Id.* at 82.
[7] *Id.* at 88; *accord Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019).
[8] *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).
[9] ECF No. 1, ¶ 19.
[10] ECF No. 14-1, ¶ 3 (DePhilips's Second Declaration).
[11] *Id.* at ¶ 20.
[12] *Id.* at ¶ 22.

required to carry Stella Artois on tap, [ ] the dollar figure associated with the Stella Artois" beer sales in corporate-owned and franchise locations, and plaintiff's prayer for attorneys' fees satisfy CAFA's jurisdictional floor.[13]

Plaintiff Christopher Bruun's remand motion takes the fizz out of those numbers. He aptly notes that the proposed class members' damages are just a subset of the total-sales figures because these customers received about 14 of their promised 16 ounces. So the amount in controversy relates to only the two ounces of beer that "Red Robin promised but did not deliver" to the class members, which would make up just 12.5% of the purchase price, or $2,000,000.[14] Yet more discounting must be done because that $2,000,000 figure assumes that all $16,000,000 in Stella sales was for 16-ounce glasses, despite the restaurant offering multiple sizes.[15] Red Robin distills this number down further in its response to the motion to remand, acknowledging that the corporate sales of the 16 ouncers made up just $7.1 million of the Stella sales "for a total of $887,500" in shortage.[16]

Supplementing with the sales at franchised locations would undoubtedly boost the amount in controversy, and a "defendant's showing on the amount in controversy may rely on reasonable assumptions."[17] If the 454 corporate stores across the country sold $16,000,000 in Stella Artois beer during the relevant period (which comes out to about $35,242 per store), then we could extrapolate that the 102 franchised locations may have sold about $3,594,684 worth.[18]

---

[13] *Id*. at ¶¶ 21, 22.
[14] ECF No. 12 at 6.
[15] *Id*. at 7; ECF No. 1-3, ¶ 14.
[16] ECF Nos. 14 at 6; 14-1, ¶ 2.
[17] *Arias*, 936 F.3d at 922.
[18] 102 x $35,242 = $3,594,684.

Supposing that all of those sales were for 16-ounce glasses, we'd still have to discount for the 14 ounces that the customers did receive, leaving an amount in controversy of just $449,335.50 for the franchise-location orders.[19]

But it is not reasonable to assume that every drop of Stella Artois beer that the franchised restaurants poured went to fill a 16-ounce order, particularly when Red Robin's numbers reflect that its 16-ounce orders made up just 44% of the Stella Artois sales at its corporate-owned locations. So again, temperance must be exercised. If the 454 corporate stores across the country sold $7,100,000 in 16-ounce Stella Artois beers during the relevant period (which comes out to about $15,639 per store), then we could extrapolate that the 102 franchised locations may have sold about $1,595,178 worth. And 12.5% of that is just $199,397. At this point in the calculations from Red Robin's own data and reasonable assumptions based on it, we only get to $1,086,897—not even a quarter of the way to CAFA's $5,000,000 threshold.

To augment that total, Red Robin tries to tap into sales from 2014–2015 by arguing that the applicable statutes of limitation may reach back six years, and forward into 2020-2021 "given the time it takes for resolution of class action matters."[20] These arguments are based on unreasonable assumptions, too. The declaration of Red Robin's Vice President of Restaurant and Corporate Technology, which was submitted in support of the removal petition, states that "[f]rom at least 2016 until the present, all corporate[-]owned Red Robin restaurants have been required to sell Stella Artois beer on draft," and Red Robin has offered nothing to suggest that this requirement was similarly in place in 2014 and 2015.[21] For the class period to extend into

---

[19] $3,594,684 x 12.5% = $449,335.50.
[20] ECF No. 14 at 6–7.
[21] ECF No. 1-,4, ¶ 4.

4

2020 and 2021 presumes that Red Robin has continued this conduct despite getting sued. Even if it did so, it would be unreasonable to assume that this sit-down restaurant chain maintained its pre-pandemic sales volume into 2020 and 2021, considering that the National Restaurant Association has labeled 2020 as "the most challenging year for the restaurant industry."[22]

The restauranteur next hypothesizes that the class might recover treble damages, which are available, it notes, in nineteen states.[23] So it multiplies the total class damages by three. But the prospect of recovering treble damages in 38% of the states in the nation can't support trebling 100% of the damages. At best, treble damages would add an estimated $1,239,063 to the amount in controversy, bringing the total to just $2,325,959.58.

Nor has Red Robin shown that a fee award will get it to the fill line. "A court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met," and the defendant must prove the amount of those fees by a preponderance of the evidence.[24] Red Robin attempts to satisfy that burden with a strange brew: a two-sentence argument and the declaration of a class-action defense attorney that "typical attorney's fees . . . ***for defendants*** in similar class actions [sic] cases run between $1 million and $2.5 million depending on" a wide range of factors.[25] As class-action attorneys well know, however, fees are earned, calculated, and paid very differently for plaintiffs than

---

[22] Romeo, Peter, *Restaurant Sales to Jump 10.2% in 2021, National Restaurant Association Says,* Restaurant Bus. (Jan. 26, 2021), https://www.restaurantbusinessonline.com/financing/restaurant-sales-jump-102-2021-national-restaurant-association-says (noting that sales for the full-service restaurant sector fell in 2020 by 30%).

[23] ECF No. 14 at 7.

[24] *Fritsch*, 899 F.3d at 788, 794.

[25] ECF No. 14-2, ¶ 4 (emphasis added).

defendants,[26] and Red Robin makes no effort to address that stout disparity. Plus, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place," but Red Robin doesn't identify any provisions that would apply in this case. And even if I were to accept Red Robin's attorneys' fees calculation and factor in its high-end estimate of $2.5 million, the amount in controversy still falls short of the $5 million mark.

## Conclusion

Because I cannot conclude that defendants have established by a preponderance of the evidence that the amount in controversy meets CAFA's jurisdictional threshold, IT IS THEREFORE ORDERED that:

- Plaintiff's Motion to Remand **[ECF No. 12] is GRANTED;**

- **The Clerk of Court is directed to REMAND this case** back to the Eighth Judicial District Court, Department 9, Case No. A-20-814178-C, and CLOSE THIS CASE; and

- All other motions **[ECF Nos. 7, 8, 11] are DENIED** as moot and without prejudice.

_____
U.S. District Judge Jennifer A. Dorsey
February 12, 2021

---

[26] *See, e.g., Fritsch*, 899 F.3d at 795–96 (discussing methods of proof of attorneys' fees in class actions and when calculating CAFA amount in controversy).